# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELO L. DAVIS, | |
| Plaintiff, | CIVIL ACTION NO. 1:16-cv-00515 |
| v. | (CONNER, C.J.)<br>(SAPORITO, M.J.) |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

## MEMORANDUM

This is a prisoner civil rights action, which was commenced on March 25, 2016, by the filing of the original *pro se* complaint in this matter, signed and dated by the plaintiff, Angelo L. Davis, on March 21, 2016. (Doc. 1). At the time of filing, Davis was no longer incarcerated. His claims, however, concern the conditions of his confinement at SCI Camp Hill, which is located in Cumberland County, Pennsylvania. Davis has been granted leave to proceed *in forma pauperis* in this action. (Doc. 8).

The plaintiff's *pro se* amended complaint was filed with leave of Court on December 20, 2017. (Doc. 68). The defendants have filed an answer to the amended complaint. (Doc. 87).

This matter now comes before the Court on a Rule 37 motion to

compel by the *pro se* plaintiff, which is fully briefed and ripe for disposition. (Doc. 72; *see also* Doc. 81; Doc. 86; Doc. 93; Doc. 94). We will first summarize the nature of the plaintiff's various civil rights claims, and then address each of the discovery deficiencies raised by the plaintiff *seriatim*. For the reasons stated herein, the plaintiff's motion will be **GRANTED in part and DENIED in part**.

A. The Plaintiff's Claims

Davis claims that the several defendants[1] violated his federal civil rights while he was incarcerated at SCI Camp Hill. Davis claims that the defendants violated his First Amendment right of access to courts, his Fourth Amendment right to be free from unreasonable search and seizure, his Fifth and Fourteenth Amendment right to due process, his Eighth Amendment right to be free from cruel and unusual punishment, his Thirteenth Amendment right to be free from slavery or involuntary servitude, and his Fourteenth Amendment right to equal protection.

---

[1] The named defendants include: (a) the Pennsylvania Department of Corrections; (b) Laurel Harry, Superintendent at SCI Camp Hill; (c) James Meintel, Deputy Superintendent at SCI Camp Hill; (d) Jen Digby, a Unit Manager at SCI Camp Hill; (e) CO Cubic, a correctional officer at SCI Camp Hill; (f) CO Huber, a correctional officer at SCI Camp Hill; and (g) CO Hughley, a correctional officer at SCI Camp Hill.

In his complaint, Davis alleges that he was transferred to SCI Camp Hill from SCI Greene on October 3, 2013. Davis alleges that he arrived at SCI Camp Hill with two boxes of personal property, and he soon received four additional boxes of property that had been separately shipped from SCI Greene to SCI Camp Hill. It is not entirely clear from the allegations of the complaint, but it appears that some or all of these boxes of personal property were stored in the SCI Camp Hill property warehouse until November 1, 2013. Upon his transfer into SCI Camp Hill, Davis alleges that Unit Manager Digby denied him "outside cle[a]rance, R-Code, Parole, and a lot of other [unspecified] prison opportunities without justification."

Davis further alleges that CO Cubic conducted a shakedown search of Davis's cell on October 13, 2014, and issued Davis a misconduct (#B212895) for possession of contraband, lying to an employee, loaning and borrowing property, and failure to report contraband. Davis alleges that CO Cubic confiscated the following property from Davis's cell, which he shared with a cell-mate: two GPX-brand radios, two state IDs, two mirrors, two toothbrushes, two cups, four pens, two lighters, a television set with Davis's name and inmate number (GY7304) on it, and a plastic kitchen knife. CO Cubic was allegedly searching for K-2 synthetic marijuana, but

found none. Davis appealed the misconduct to final administrative review, but his appeals were denied.

A few days earlier, on October 9, 2014, a similar shakedown search had been conducted on the same block. While property was confiscated from other inmates, none of those inmates received a misconduct like Davis did, and all of the property was eventually returned to those inmates. Davis had also been through other shakedown searches previously, with the same property, and he had never before been written up for possession of contraband.

On October 15, 2014, Davis appeared before a hearing examiner who allegedly stated that he believed the misconduct charges to be "frivolous" but found Davis guilty nevertheless. Davis alleges that he was denied due process during these misconduct proceedings because he did not receive copies of property confiscation slips until after the hearing. As a result, Davis alleges a violation of his Fourteenth Amendment due process rights, his First Amendment right of access-to-courts, and his Eighth Amendment right to be free from cruel and unusual punishment. Davis further alleges that all of his confiscated property was destroyed, and that this was also a deprivation of due process.

As a result of the misconduct proceedings, Davis alleges that he was confined to the restricted housing unit (the "RHU"), which was unfit for human habitation due to unsanitary conditions and broken plumbing fixtures. Moreover, Davis alleges that he was denied a hernia belt and other medical attention while he was incarcerated in the RHU.

Davis appears to allege that Deputy Superintendent Meintel violated his due process rights by failing to timely respond to Davis's misconduct appeal. Davis appears to allege that Superintendent Harry violated his due process rights by upholding the misconduct decisions on appeal. For reasons that are not altogether clear from the complaint, Davis also appears to seek to hold Meintel, Digby, CO Hughley, and CO Huber liable for forcing him to go through and pack all of his personal property into four boxes over a three-day period, beginning on November 3, 2014.

Davis seeks an award of $75,000 in damages from each defendant.

### B. The Plaintiff's Discovery Requests

#### *1. Request No. 4: Transfer Petition and Vote Sheet*

In Document Request No. 4, Davis seeks production of the transfer petition for his move from SCI Greene to SCI Camp Hill, and a related "DC-46" vote sheet. The defendants have objected to production on the

grounds that: (a) the plaintiff has no legal claim related to the transfer itself; and (b) because the information contained in responsive materials is confidential and production could jeopardize the safety and security of inmates and staff.

Davis appears to argue that the transfer petition will establish that he was transferred from SCI Greene to SCI Camp Hill to "sabotage" or interfere with his access to courts in another, unrelated federal civil rights action. He further argues that the transfer violated his Fourteenth Amendment due process rights because it was not supported by the proper documentation.[2]

The defendants' objection is well founded. The plaintiff's complaint includes neither an access-to-courts claim nor a due process claim with respect to his transfer from SCI Greene,[3] and there are no allegations in

---

[2] Davis has also referenced the Thirteenth Amendment, but it is unclear how the constitutional right to be free from slavery or involuntary servitude, except as punishment for an individual duly convicted of a crime, is implicated by this category of documents.

[3] Davis appears to articulate two separate access-to-courts claims. The first arises out of the failure of prison officials to provide him with property confiscation receipts until weeks after his October 15, 2014, misconduct hearing had been conducted, allegedly depriving him of the ability to defend himself in those prison administrative proceedings. The second claim is that prison officials confiscated his legal materials for 24
*(continued on next page)*

the complaint to implicate any of the defendants presently before this Court in this action in Davis's transfer out of SCI Greene. Moreover, prison inmates have no right to due process before transfer to a less desirable prison and no right to any particular classification or to eligibility for rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

Accordingly, we find that the requested materials are not relevant to the parties' claims or defenses in this action, and therefore the defendants' objection is SUSTAINED and the plaintiff's motion is DENIED with respect to Request No. 4.

### 2. *Request No. 5: Copies of Deposition Transcripts*

In Document Request No. 5, Davis seeks production of transcripts of depositions taken in this case on June 30, 2017. The defendants object that the documents are in the possession of a third party—the stenographer—

---

days, returning them to him on November 6, 2014, which somehow interfered with his ability to litigate two other federal civil rights actions. *See generally Davis v. Harlow*, 632 Fed. App'x 687 (3d Cir. 2015) (per curiam), *aff'g* Civil Action No. 11-1506, 2013 WL 1195033 (W.D. Pa. Mar. 22, 2013) (partial dismissal), *and* 2014 WL 4250382 (W.D. Pa. Aug. 26, 2014) (summary judgment on remaining claims); *Davis v. Pa. Dep't of Corr.*, Civil Action No. 14-1551, 2016 WL 1639623 (W.D. Pa. Apr. 26, 2016) (dismissing action). Davis has not pleaded any claims whatsoever arising directly out of his prison transfer.

and any request for transcripts should be made directly to the stenographer who recorded the deposition testimony. The defendants do not dispute that they took depositions in this case on that date, or that they are in possession of copies of the deposition transcripts.

Davis has been granted *in forma pauperis* status in this case. As the Third Circuit has observed:

> The *in forma pauperis* statute, 28 U.S.C. § 1915, permits the waiver of prepayment of fees and costs for *in forma pauperis* litigants, *see* 28 U.S.C. § 1915(a), and allows for payment by the United States of the expenses of "printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court," and of "preparing a transcript of proceedings before a United States magistrate in any civil or criminal case, if such a transcript is required by the district court," 28 U.S.C. § 1915(b). There is no provision in the statute for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.

*Tabron v. Grace*, 6 F.3d 147, 158–59 (3d Cir. 1993).

Davis has not requested the Court to authorize federal funds to pay to furnish him with these deposition transcripts, but rather that the defendants produce copies of the deposition transcripts in discovery, at no expense to him. As the Third Circuit has recognized:

> [A]s part of the inherent equitable powers of the district court in supervising discovery, a district court may, under some circumstances, exercise its discretion to order an opposing party to pay for or to provide copies of deposition transcripts for an indigent litigant as a condition precedent to allowing that party to take depositions.

*Id.* at 159. This Court has previously recognized, as a general rule, that "[c]ivil litigants generally bear their own deposition expenses initially. A defendant is not required to advance the plaintiff's deposition expenses merely because the plaintiff is unable to pay for such costs and fees." *Badman v. Stark*, 139 F.R.D. 601, 606 (M.D. Pa. 1991) (citation and footnote omitted). But this request does not concern expenses to be incurred by an indigent plaintiff seeking to *take* a deposition. Here, the indigent plaintiff merely seeks a copy of stenographic transcripts of discovery proceedings conducted *by the defendants*, for which they have already paid stenographic fees. "Such a request is not at all unreasonable; the usual practice is for 'the other side' to be given a copy of a deposition scheduled by the opponents, once it has been transcribed." *Id.* at 606.

Accordingly, the defendants' objection is OVERRULED, the plaintiff's motion is GRANTED with respect to Request No. 5, and we will direct the defendants to furnish the plaintiff with a copy of the transcript

of any deposition taken by the defendants in this case on June 30, 2017.

### 3. *Request No. 6: Work Order*

In Document Request No. 6, Davis seeks production of a work order for the repair of a sink and toilet in D-Block RHU cell "B-14" prior to the plaintiff's placement in that cell, where he resided between October 13 and 30, 2014. The defendants initially objected to production on relevance grounds, noting that, based on his cell assignment records, Davis was never placed in that cell. Subsequent investigation by the defendants determined that Davis was indeed in cell B-14 from October 13, 2014, to October 30, 2014. In response to the motion to compel, the defendants have produced a work order history for D-Block during the relevant time period,[4] and they have added to their relevance objection, asserting that Davis failed to exhaust administrative remedies with respect to any cell conditions claim he might have concerning cell B-14. In response, the plaintiff has accused the defendants of "fraud" based on their initial, erroneous response to this document request, which we liberally construe as a request for sanctions under Fed. R. Civ. P. 26(g) for improper

---

[4] The work order history reveals no work orders concerning cell B-14 between September 10 and October 30, 2014.

certification of a discovery response. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions).

At the outset, we find unpersuasive the defendants' attempt to interpose a failure-to-exhaust affirmative defense, not yet tested by trial or a dispositive motion, as a limitation on discovery practice. "Objections to [discovery requests] may not be used as a vehicle for deciding the merits of a case." *Clark Motor Co., Inc. v. Mfrs. & Traders Tr., Co.*, No. 4:07-CV-856, 2008 WL 2498252, at *1 (M.D. Pa. June 18, 2008) (citing *United States v. 216 Bottles of 'Sudden Change,'* 36 F.R.D. 695, 700 (E.D.N.Y. 1965)); *see also Curtis v. Loew's*, 20 F.R.D. 444, 446 (D.N.J. 1957). As one of our sister courts has observed:

> [T]he information may be relevant to [the plaintiff's] claims against [the defendants], and [the defendants'] assertion of an affirmative defense does not negate [the plaintiff's] right to take discovery of relevant information. To hold otherwise would allow any party to assert a variety of affirmative defenses that may or may not be legitimate simply as a means to limit discovery. That is contrary to the purpose of Fed. R. Civ. P. 26(b)(1).

*Zvelo, Inc. v. SonicWALL, Inc.*, Civil Action No. 06-cv-00445-PAB-KLM, 2013 WL 2338352, at *3 (D. Colo. May 29, 2013).

We further find the defendants' production of the work order history

for D-Block sufficient, notwithstanding the delay in production. Based on the declarations and documentary evidence submitted by the defendants, we find their initial, erroneous response to this discovery request was substantially justified. As a corollary, we find the Rule 26(g) certification by counsel of record for the defendants was not improper, and sanctions are not appropriate.

Accordingly, we find the plaintiff's motion to compel with respect to Request No. 6 is moot and the defendants were substantially justified in their failure to produce responsive documents until after the motion was filed.

### *4. Request No. 7: "Formal Staffing Packet"*

In Document Request No. 7, Davis seeks production of the "formal staffing packet" for his transfer from SCI Greene to SCI Camp Hill "pursuant to the 805 Policy transfer petition." The defendants have objected to production on the grounds that: (a) the request is vague and overbroad—specifically, the defendants do not know what is meant by "formal staffing packet"; and (b) because the information contained in responsive materials is confidential and production could jeopardize the safety and security of inmates and staff.

For the same reasons stated above with respect to Request No. 4, we find that the requested materials are not relevant to the parties' claims or defenses in this action, and therefore the defendants' objection is SUSTAINED and the plaintiff's motion is DENIED with respect to Request No. 7.

### 5. *Request No. 10: The RHU Rules and Regulations*

In Document Request No. 10, Davis seeks production of the RHU Rules and Regulations dated July 28, 2014. The defendants produced a copy of the RHU Rules and Regulations dated July 5, 2013. Davis claims that this set of regulations is irrelevant to his claims, which are governed instead by a similar—but not identical—set of RHU Rules and Regulations promulgated on July 28, 2014, three months before his placement in the RHU. In their motion papers, the defendants have not responded to Davis's request for relief with respect to this particular document request.

Davis claims that prison officials failed to comply with a provision in the RHU Rules and Regulations that required someone to conduct an inspection and complete and sign a cell condition report upon the inmate's assignment to a cell in the RHU. But a state prison official's "failure to adhere to administrative regulations does not equate to a constitutional

violation" cognizable under § 1983. *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984)).

Accordingly, we find that the requested materials are not relevant to the parties' claims or defenses in this action, and therefore the plaintiff's motion is DENIED with respect to Request No. 10.

### 6. Request No. 11: Video Footage

In Document Request No. 11, Davis seeks production of security camera video footage of the plaintiff going through his personal property in the RHU cage between November 3 and 6, 2014. The defendants initially responded in discovery that they have no responsive video footage. Davis simply refuses to accept this response and insists, without factual support, that a video recording exists and the defendants should be compelled to produce it. In their motion papers, the defendants have not responded to Davis's request for relief with respect to this particular document request.

There is no evidence whatsoever in the record before us to contradict the representation of counsel in the defendants' discovery responses that no responsive video footage exists. A party "cannot be compelled to produce what she does not possess." *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 281

(E.D. Pa. 1992). Accordingly, the plaintiff's motion is DENIED with respect to Request No. 11.

### 7. *Request No. 12: History of Cell Searches*

In Document Request No. 12, Davis seeks production of documents concerning the history of cell searches conducted between October 3, 2013, and October 13, 2014, on F-Block, P-Block, and M-Block. The defendants initially objected on the ground that the burden of providing this extensive history of cell searches was not proportional to the needs of this case.

In his motion papers, Davis has argued that production of the requested materials would permit him to establish how many correctional officers searched his cell prior to CO Cubic's search on October 13, 2014, and whether they found any of Davis's property to be contraband in those earlier searches. In their motion papers, the defendants have not responded to Davis's request for relief with respect to this particular document request.

We agree that this request, as made by the plaintiff, is not proportional to the needs of this case. Indeed, we see no relevance whatsoever to the requested materials with respect to searches conducted long before the one at issue in this case, or to searches conducted on F-

Block and P-Block—Davis had been housed on M-Block for two months before the search. But among his several other claims, Davis has asserted a violation of his equal protection rights, suggesting that other inmates were treated differently—that is, they were searched less frequently, or similar property in their possession was not confiscated and destroyed as contraband. We find that a narrower range of materials—all documents concerning cell searches on M-Block between August 14, 2014, and October 13, 2014, with personal identifiers for any inmates (other than the plaintiff) or prison officials (other than the defendants) redacted—is both relevant to the claims or defenses in this action and proportional to the needs of this case.

Accordingly, the plaintiff's motion is GRANTED IN PART and DENIED IN PART with respect to Request No. 12. The defendants will be directed to produce all documents concerning cell searches on M-Block between August 14, 2014, and October 13, 2014, with personal identifiers for any inmates (other than the plaintiff) or prison officials (other than the defendants) redacted. To the extent the defendants believe any further redaction or withholding of responsive documents is justified, they should serve plaintiff with a "privilege log" specifically designating and describing

the withheld or redacted documents as well as the precise and certain reasons for preserving their confidentiality.

### *8. Request No. 18: Condemnation of D-Block RHU*

In Document Request No. 18, Davis seeks production of all documents concerning the condemnation of SCI Camp Hill's D-Block RHU for being unfit for human habitation. The defendants initially objected on the grounds that: (a) the request was not proportional to the needs of this case; and (b) the burden of searching for and producing responsive documents outweighs any likely benefit. Notwithstanding these objections, the defendants responded that the RHU was not condemned as unfit for human habitation, but had been closed for operational needs.

In his motion papers, Davis argues that, notwithstanding the defendants' denial that responsive documents exist, the RHU was indeed unfit for human habitation, and the defendants should therefore be directed to produce responsive documents. In their motion papers, the defendants have not responded to Davis's request for relief with respect to this particular document request.

Notwithstanding their objections to it, the defendants have clearly responded to this request, advising Davis that no responsive documents

exist because the essential premise of his request—that the RHU had been formally condemned as unfit for human habitation—was incorrect. As noted above, a party "cannot be compelled to produce what she does not possess." *Dipietro*, 144 F.R.D. at 281. Accordingly, the plaintiff's motion is DENIED with respect to Request No. 18.

**C. Other Matters**

Although not directly related to any of the particular document requests for which the plaintiff seeks relief, we find it appropriate to address two other issues arising from the parties' motion papers.

First, the defendants have argued generally that any discovery related to Davis's Fourth Amendment unreasonable search and seizure claims should be disallowed because his claims are without merit. But, as noted above, "[o]bjections to [discovery requests] may not be used as a vehicle for deciding the merits of a case." *Clark Motor Co.*, 2008 WL 2498252, at *1. At this time, the plaintiff's Fourth Amendment claims have not been dismissed nor has judgment been entered in favor of the defendants. Indeed, the defendants have yet to file a dispositive motion in this case. As a result, discovery into these claims remains appropriate at this point.

Second, the defendants apparently have taken the position in discovery conferences and in their motion papers that the federal rules concerning initial disclosures do not apply in this case because they explicitly exempt actions "brought without an attorney by a person in the custody of the United States, a state, or a state subdivision." Fed. R. Civ. P. 26(a)(1)(B)(iv). But, as we previously noted in denying the defendants' motion to revoke *in forma pauperis* status, this plaintiff was not a prisoner at the time of filing in this case. (Doc. 39). He was released from state custody nine days before commencing this action. (*Id.*). The parties therefore will be directed to serve initial disclosures in accordance with Rule 26(a)(1).

An appropriate Order will follow.

Dated: May 18, 2018

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge